IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBRA JEAN LAWLER, \*

    Plaintiff, \*

v.      \*      Civil Action No. BPG-09-1614

MICHAEL J. ASTRUE, \*
Commissioner of
Social Security, \*

    Defendant. \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff, Debra Jean Lawler, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (ECF Nos. 14, 30.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (ECF No. 14) and grants defendant's Motion for Summary Judgment (ECF No. 30).

I. **Background**

Plaintiff filed for a period of disability and DIB on June 9, 2006, alleging that she became disabled on November 8, 2004 as

a result of, inter alia, membranous nephropathy,[1] arthritis, gout, and osteoporosis.  (R. at 79-84, 105.)  After her application was denied initially (R. at 49, 51-54), and upon reconsideration (R. at 50, 58-59), plaintiff appeared via videoconference for a hearing before Administrative Law Judge ("ALJ") Melvin D. Benitz on May 20, 2008 (R. at 25-48).  Plaintiff was represented at her hearing by Paul R. Schlitz, Esq.  (R. at 25.)  Also testifying was a qualified vocational expert ("VE").  (R. at 39-46.)  In a decision dated June 9, 2008, ALJ Benitz concluded that plaintiff is not disabled under the relevant sections of the Social Security Act and, accordingly, denied her application for benefits.  (R. at 10-24.)

On August 22, 2009, the Appeals Council held that there was no basis for granting review of the ALJ's decision.  (R. at 1-3.)  Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits she has requested.  (ECF No. 14.)  In the alternative, plaintiff asks this court to remand the matter for further proceedings.  (Id.)

## II. Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial

---

[1] Membranous nephropathy is a kidney disorder characterized by "inflammation of the structures inside the kidney that help

evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of

---

filter waste and fluids," causing kidney function to become impaired. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001504.

> Impairments ("Listings"). If so, the claimant is disabled.

> (4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

### III. **Discussion**

The ALJ analyzed plaintiff's claim pursuant to the requisite five-step sequential analysis. At step one, the ALJ determined that plaintiff is not currently engaged in substantial gainful activity. (R. at 12.) At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "status post left ankle fracture with open reduction and internal fixation; status post two left shoulder surgeries; kidney nephropathy with chronic kidney disease and obesity." (R. at 12-15.) At step three, the ALJ found that plaintiff's limitations do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 15-16.) At step four, the ALJ concluded that plaintiff is not able to perform past relevant work. (R. at 22.) At step five, the ALJ

4

determined that, based on plaintiff's RFC, age, education, and past work experience, plaintiff is capable of other work that exists in significant numbers in the national economy. (R. at 22-23.) Accordingly, the ALJ concluded that plaintiff is not disabled. (R. at 23.)

Prior to her step four and step five determination, the ALJ concluded that plaintiff retains the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could stand for 10 minutes and sit for 30 minutes consistently on an alternate basis for 8 hours a day, 5 days a week; would need to avoid heights and hazardous machinery; would need to avoid prolonged climbing, balancing and stooping defined as no more than 1-2 times per hour; would need to avoid temperature and humidity extremes, vibration and ladders, ropes and scaffolds; would be mildly limited in pushing, pulling and gripping in the left upper extremity; should avoid overhead lifting with the left upper extremity; would require jobs allowing for elevation of the ankle if needed and allowing for ready access to a bathroom if needed and would require simple routine jobs that involve low stress, low concentration and low memory, defined as svp2[2] jobs.

(R. at 16-22.)

On appeal, plaintiff argues that the ALJ erred in several respects: (1) the ALJ's hypothetical to the vocational expert ("VE") did not produce a significant number of jobs to support a denial of benefits (ECF No. 14-1 at 5-6) and was "unclear and

---

[2] SVP refers to "Specific Vocational Preparation," which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles (DOT) Appendix C (4th rev. ed. 1991).

internally inconsistent" (Id. at 8-9); (2) the ALJ improperly afforded the medical opinion of plaintiff's treating physician, Dr. Santos-Tecson, less than controlling weight (Id. at 7); and (3) there is no medical opinion to support the ALJ's determination that plaintiff's kidney disease does not meet or equal a Listing, and the ALJ does not have the "medical acumen" to make such a determination (Id. at 7-8). The court will address these arguments in turn.

### A. The ALJ's Hypothetical

Plaintiff argues that the ALJ erred at step five of the sequential analysis because his hypothetical to the VE did not produce a sufficient number of jobs to support his finding that plaintiff is capable of performing work that exists in the national economy and therefore not disabled. (Id. at 5-6.) Plaintiff also complains that the ALJ's hypothetical was "unclear and internally inconsistent." (Id. at 8-9.)

The ALJ's hypothetical to the VE described plaintiff's limitations as follows:

> I'd like to give you a hypothetical of a person who is 42 years of age on her onset date. She has a 12th grade education and the past relevant work as indicated, left-handed by nature, suffering from various impairments. She has gout on occasion. She has a kidney deficiency and nephropathy. And she has left upper extremity deficiency in her shoulder and mild degenerative disk [sic] disease, obesity. All these things do cause her to have some pain and discomfort, some decreased range of motion in her left upper extremity. She also has a

> fractured left ankle in 2002 that is still giving her
> problems, swelling, all of which is somewhat relieved by
> her medications without significant side effects. She
> indicates she (inaudible) tiredness from one or a
> combination of medicines. If I find . . . that
> [plaintiff] needs to have simple, routine, unskilled job,
> SVP two job, low stress, low concentration, low memory,
> is able to attend to tasks and complete schedules;
> however, this due to her pain and discomfort. Able to
> lift ten pounds occasionally, lesser amounts frequently.
>  Stand for 10 minutes, sit for 30 minutes at a time
> consistently on an alternate basis during an eight-hour
> day, five days a week. That due to her ankle would have
> to avoid heights and hazardous machinery. No prolonged
> climbing, standing, balancing. By that I mean no more
> than once or twice an hour. Avoid temperature and
> humidity extremes, vibrations, ladders, ropes, scaffolds.
>  And would be at this time moderately limited as to push
> and pull with the left upper extremity. No overhead
> reaching with that extremity, and jobs that would allow
> her to elevate her ankle off of weight bearing on
> occasion, if needed. And jobs that would allow her to
> have ready access to a bathroom as she needs. With those
> limitations she can do sedentary work activity . . . .

(R. at 40-41.) The VE who testified at plaintiff's hearing found that, based on the above hypothetical, plaintiff was capable of performing sedentary, unskilled jobs and that such jobs exist in significant numbers in the national economy. (R. at 41-43.) Specifically, the VE identified two occupations that would allow plaintiff a sit/stand option and enable her to elevate her ankle and have access to a bathroom: call-out operator and information clerk. (R. at 41-42.) The VE noted that there are 65,000 call-out operator positions nationally and 510 regionally, with 75-100 regionally that would allow for the limitations described in the ALJ's hypothetical. (R. at 42-43.) The VE also testified that there are 1 million information clerk positions nationally and

7

12,000 regionally, with 3,000 regionally accounting for the ALJ's hypothetical. (Id.)

Plaintiff challenges the information clerk position because "the VE stated that it was light work exertionally" but "[t]he ALJ limited [plaintiff] to sedentary work." (Id. at 5-6 (citing 20 C.F.R. § 404.1567(b)).) The regulations discussing physical exertion requirements define "light" work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Sedentary" work, on the other hand, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." § 404.1567(a).

As plaintiff points out, the ALJ's hypothetical must ensure that the VE understands what the claimant's limitations are. (ECF No. 14-1 at 8 (citing Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) (hypothetical question to VE must "fairly set out all of claimant's impairments").) Here, the VE was careful to qualify the information clerk position as "light, but light meaning because you're using your upper extremity, not because of weight exertion." (R. at 42.) Contrary to plaintiff's assertion, this is consistent with the ALJ's hypothetical, which stated that plaintiff "has left upper extremity deficiency" which "cause[s]" her to have some pain and discomfort" and "decreased

8

range of motion in her left upper extremity," and that plaintiff is "moderately limited" in her ability to push and pull with her upper left extremity. (R. at 40-41.) The ALJ's hypothetical plainly stated that, as a result of her impairments, plaintiff is limited to less strenuous "sedentary work activity" and can lift "ten pounds occasionally, lesser amounts frequently." (R. at 41.)

Plaintiff also takes issue with the call-out operator position, claiming that it does not exist in sufficient numbers to support the ALJ's finding that plaintiff is capable of performing work that exists in significant numbers in the national economy. (ECF No. 14-1 at 6.) Specifically, plaintiff argues that 75-100 jobs is not a "significant number" within the meaning of 42 U.S.C. § 423(d)(2)(A).[3] (Id.)

The statute and corresponding regulations clearly state that "work . . . exists in the national economy" for purposes of the

---

[3] 42 U.S.C. § 423(d)(2)(A) provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

9

disability determination when it "exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The regulations go on to state that "[i]t does not matter whether [ ] [w]ork exists in the immediate area in which [the claimant] live[s]" or that the work exists in only one occupation. 20 C.F.R. § 404.1566(a)(1), (b). The fact that there are only 75-100 call-out operator jobs in the region where plaintiff lives, therefore, does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy. Moreover, the 75-100 call-out operator jobs did not represent the total number of jobs identified by the VE—the VE also identified 3,000 information clerk jobs regionally that plaintiff would be capable of performing. Finally, plaintiff's argument is undermined by Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to conclude that 110 jobs in the region is an insignificant number)[4] and Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1980) (upholding 1350 jobs in a nine-county area as a "significant number" even where they represented a small percentage of the total jobs available).

---

[4] Plaintiff inaccurately asserts that the Hicks court "stated that 100 jobs were not a significant number of jobs in 1979." (ECF No. 14-1 at 6.)

Plaintiff also complains that "the VE was unclear about the parameters of "region" asserting that "[o]nly national numbers and "Baltimore" were mentioned." (ECF No. 14-1 at 6.) The VE, however, expressly defined "regional area" as "Baltimore and the surrounding area." (R. at 42.) More importantly, as discussed above, the statutory scheme does not require that work exist in the immediate region where a claimant lives for it to "exist[] in the national economy." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a).

Finally, plaintiff complains that the ALJ's hypothetical was inconsistent with his description in his opinion of plaintiff's RFC. (ECF No. 14-1 at 8-9.) Specifically, plaintiff points out that the ALJ's hypothetical described her as "moderately limited as to push and pull with the left upper extremity" (R. at 41), whereas the ALJ's opinion described her as "mildly limited in pushing, pulling and gripping in the left upper extremity" (R. at 16). Plaintiff contends that the ALJ failed to define the terms "moderate" and "mild." (ECF No. 14-1 at 8-9.) This argument is unpersuasive. The court finds no inconsistency in the ALJ's hypothetical as compared to his opinion, and cannot conclude that his failure to define the terms "mild" and "moderate" constitutes reversible error, nor does plaintiff advance any legal support for such a conclusion.

In sum, the ALJ's hypothetical "fairly set out" all of

11

plaintiff's impairments and consequent limitations, Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) and produced a sufficient number of jobs that were consistent with these limitations to support his conclusion that plaintiff is capable of performing work that exists in the national economy. Accordingly, the ALJ's conclusion at step five of the sequential analysis that plaintiff is not disabled is supported by substantial evidence.

**B.    The ALJ's Consideration of Dr. Santos-Tecson's Opinion**

Plaintiff next argues that the ALJ improperly gave less than controlling weight to the medical opinion of her treating physician, Dr. Encarnita Santos-Tecson. (ECF No. 14-1 at 7.) Specifically, plaintiff argues that there was no persuasive evidence contradicting Dr. Santos-Tecson's opinion and that the ALJ failed to properly evaluate Dr. Santos-Tecson's opinion according to the criteria set forth in 20 C.F.R. § 404.1527(d)(1)-(6). (Id. (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (treating physician's opinion should not be rejected unless there is persuasive contrary evidence); SSR 96-2p).) The Commissioner responds that "the ALJ did, in fact, discuss and explain his reasons for not giving controlling weight to the opinion of Dr. Santos-Tecson." (ECF No. 30-2 at 14 (citing R. at 20-21).)

Ordinarily, the testimony of treating physicians is given great weight in disability determinations. See 20 C.F.R. §

12

404.1527(d)(2); Coffman v. Bowen, 829 F.2d 514, 517-18 (4th Cir. 1987). A treating physician's opinion, however, should be given significantly less weight if it is inconsistent with substantial evidence. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (citing 20 C.F.R. § 416.927 (1996)).

Dr. Santos-Tecson has been plaintiff's treating physician at the Veterans Affairs Medical Center ("VAMC") since December 2004. (R. at 233.) On June 27, 2007, Dr. Santos-Tecson completed a Medical Assessment of Ability to Do Work-Related Activities (Physical), in which she opined that plaintiff was limited to lifting or carrying ten pounds frequently and fifteen pounds occasionally due to her history of "recurrent dislocation of [the left] shoulder joint with recent repair" that has "still not healed 100%," and that plaintiff can sit and stand or walk for up to ten minutes and occasionally perform all postural activities as a result of her "underlying renal disease." (R. at 230-31.) Dr. Santos-Tecson further found that plaintiff's handling and pushing/pulling abilities were limited due to her "underlying left shoulder impairment" and that plaintiff had various environmental restrictions as a result of her "underlying chronic renal disease." (R. at 232.) Dr. Santos-Tescon concluded that, due to her renal condition, plaintiff is unfit to work under any circumstances. (R. at 233.)

The ALJ considered Dr. Santos-Tecson's opinion and concluded

13

that it was unsupported by the evidence and inconsistent with the record as a whole and, accordingly, afforded it only "some weight." (R. at 20.) The ALJ noted that, even though his conclusion as to plaintiff's left shoulder limitations was actually more generous than Dr. Santos-Tecson's, "the medical records reveal no real difficulties with the left upper extremity following [plaintiff's] surgery." (Id.) The ALJ considered, for example, plaintiff's orthopedic surgeon's report that plaintiff was "doing well" following her shoulder surgery as of January 2007, had good strength and improved range of motion, and only complained of some stiffness and soreness. (R. at 15, 18 (citing R. at 220-225, 234-333).) The ALJ further observed that there were no complaints of any problems with plaintiff's shoulder noted in the medical records from the VAMC or from Preston Family Physicians. (R. at 18 (citing R. at 234-333, 343-353).) The ALJ also noted plaintiff's testimony at the hearing that she has not dislocated her shoulder since the surgery and only experiences "some joint pain" but "admitted to being scared to use the arm" for fear of reinjuring it. (R. at 18, 20.)

The ALJ also considered plaintiff's ankle impairment, observing that the medical reports revealed only "some edema" and "occasional bouts of gout" and noting that "[t]here is no indication of any major residual effects from her fracture." (R. at 20 (citing R. at 153-204, 234-333, 343-53).) Moreover, the

14

ALJ found that "nothing in the medical records from the VAMC, Preston Family Physicians or Dr. Weinstein"[5] support a finding that plaintiff is limited to sitting and standing for less than ten minutes. (Id. (citing R. at 153-204, 234-333, 343-53, 354-63).)

The ALJ also observed, in assessing Dr. Santos-Tecson's opinion, that plaintiff's kidney disease is "currently stage II," "mild in nature," and has improved over time, noting that, "even when [plaintiff] had more significant proteinuria,[6] lower GFP and higher creatine levels, her condition was only moderate at best." (R. at 20 (citing R. at 153-204, 234-363).) The ALJ considered the opinion of plaintiff's nephrologist, Dr. Weinstein, who treated plaintiff in March and April of 2008, that plaintiff had "mild" chronic kidney disease, "very little proteinuria and reasonably well-preserved kidney function," which the ALJ concluded was "not consistent with a disabling kidney condition." (R. at 18 (citing R. at 357-58).) The ALJ also discredited Dr. Santos-Tecson's conclusion that plaintiff's limitations have existed since 2000, noting that Dr. Santos-Tecson did not begin treating plaintiff until 2004. (R. at 20.)

---

[5] Dr. Adam J. Weinstein, M.D., is a nephrologist who began treating plaintiff in March, 2008. (R. at 354-63.)

[6] Proteinuria is a condition characterized by abnormal levels of protein in the urine. http://kidney.niddk.nih.gov/kudiseases/pubs/proteinuria.

15

While the ALJ did not expressly cite to all of the factors listed in the Code of Federal Regulations regarding the weight given to the treating physician's opinion,[7] the ALJ discussed the factors that were primarily relevant to the facts presented in this case, that is, the lack of evidentiary support for Dr. Santos-Tecson's conclusion and its inconsistency with other evidence of record.[8]  As the Commissioner notes, the ALJ "explained each of his determinations with citations to supporting portions of the record."  (ECF No. 30-2 at 15.)  In sum, the ALJ's decision to accord Dr. Santos-Tecson's opinion only "some weight" was supported by substantial evidence.[9]

---

[7] The factors to consider in determining how much weight to give a medical opinion are: (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of treatment; (3) the evidence supporting the opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's specialization, if any; and (6) other factors. 20 C.F.R. § 404.1527(d) (2006).

[8] The ALJ also accorded "little weight" to the opinions of state agency consultants Maureen Ahn, M.D., and James Johnston, M.D., because they did not consider medical evidence produced after their opinions were rendered and did not properly evaluate plaintiff's subjective complaints.  (R. at 21.)  Further, the ALJ found consultative examiner Dr. Christian Jensen's medical assessment to be "of little benefit" because he did not examine plaintiff's left shoulder or provide specific quantification of plaintiff's limitations.  (R. at 20-21.)  The ALJ thus considered the evidence supporting all of the medical opinions, as well as their consistency with the record as a whole, in determining which opinions to credit.

[9] In addition to the evidence discussed above, earlier in his opinion, the ALJ cited medical records, including an October, 2006 letter from Dr. Santos-Tecson, indicating that plaintiff has not always been compliant in taking her prescribed medications.

**C.   The ALJ's Evaluation of Plaintiff's Kidney Disease**

Finally, plaintiff argues that there is no medical opinion to support the ALJ's determination at step three of the analysis that plaintiff's kidney disease did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further asserts that the ALJ "does not have the medical acumen" to reach make such a determination. (ECF No. 14-1 at 7-8 (citing Bailey v. Chater, 68 F.3d 75 (4th Cir. 1995).) The Commissioner responds that the "regulations require that the ALJ analyze the medical records and make final determinations as to whether claimants are disabled" and asserts that the medical records support a finding that plaintiff is not disabled. (ECF No. 30-2 at 19-27.)

The regulations promulgated by the Commissioner expressly state that ALJs "are responsible for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(f)(2). The regulations further state that resolution of certain issues is reserved to the ALJ, including whether a claimant meets the statutory definition of disabled and whether a claimant's impairments meet or medically equal a Listing. 20 C.F.R. §§ 404.1527(e)(1)-(2); 404.1526(e). Further, as the

---

(R. at 18 (citing R. at 153-204, 234-333); see English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) (claimant's failure to take prescribed medications supported ALJ's conclusion that claimant was not disabled).)

17

Commissioner points out, "the regulations contemplate that not all cases will include medical opinions." (ECF. No. 30-2 at 20 (citing 20 C.F.R. § 404.1527(a)(2) ("Evidence that you submit or that we obtain may contain medical opinions.") (emphasis added).) Thus, contrary to plaintiff's assertion, the ALJ properly evaluated the medical evidence in the record, including notes and reports by plaintiff's physicians and laboratory test results, to reach a conclusion that plaintiff's kidney condition was not disabling.[10] In addition, substantial evidence in the record supports the ALJ's conclusion that plaintiff's kidney condition did not meet or equal a Listing. (R. at 16.) The ALJ observed that plaintiff "has not been on dialysis; has not had a kidney transplant and has not had creatine levels persisting at 4 mg. or higher or a reduction of creatine clearance to 20 ml. per minute or less for 3 months," as required to meet Listing 6.02, "Impairment of Renal Function." (Id. (citing R. at 153-204, 234-333, 335-363).) In addition, the ALJ determined that plaintiff's kidney condition does not meet or equal Listing 6.06 for

---

[10] As the Commissioner argues, the case plaintiff cites in support of her argument, Bailey v. Chater, 68 F.3d 75, 78 (4th Cir. 1995), held that an ALJ is required, pursuant to SSR 83-20, to consult a medical advisor to determine the onset date of the claimant's disability where evidence regarding the onset date is ambiguous. This case does not stand for the broad proposition, as plaintiff urges, that "medical findings by an ALJ without medical authority are invalid." (ECF No. 14-1 at 8.) As the instant case presents no issue as to the onset date of plaintiff's alleged disability, Bailey is inapposite.

nephrotic syndrome, "as she has not had significant anasarca[11] persistent for at least 3 months despite prescribed therapy," as required to meet that Listing. (Id.) The ALJ's finding is consistent with the determination of plaintiff's nephrologist, Dr. Weinstein, that plaintiff had "reasonably well-preserved kidney function" and "mild" stage II chronic kidney disease as well as his recommendation of medication and continued renal monitoring. (R. at 357-58.) In sum, plaintiff does not point to, nor does a review of the record reveal, any medical evidence that indicates that plaintiff meets the criteria in either of the relevant Listings.

## IV. Conclusion

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (ECF No. 14), and grants defendant's Motion for Summary Judgment (ECF No. 30). A separate Order shall issue.


Date: 04/19/11                          /s/
                                        Beth P. Gesner
                                        United States Magistrate Judge

---

[11] Anasarca is defined as "generalized massive edema." Dorland's Medical Dictionary 75 (31st ed. 2007).